Merry Virginia WRIGHT, Executrix of the Estate of Mrs. Phil Peery, a/k/a Irene Adele Peery, Plaintiff-Appellant,

v.

The MECHANICS BANK OF ST. JOSEPH, now Commerce Bank of St. Joseph, Defendant-Respondent.

No. 25541.

Kansas City Court of Appeals, Missouri.

April 5, 1971.

McLaughlin & Vanet, W. Hugh McLaughlin, Kansas City, for appellant.

W. H. Utz, Jr., of Smith, Utz, Litvak & Thackery, St. Joseph, Louis Kranitz, of Kranitz & Kranitz, St. Joseph, for respondent.

FLOYD L. SPERRY, Special Commissioner.

Mrs. Phil Peery (Irene Adele Peery), a widow, filed this suit. After her death, her niece and executrix became plaintiff. The amount sued for is $8,649.59 and punitive damages. The claim for punitive damages has been abandoned. The cause of action is based on a check for $9,000.00 drawn by Mrs. Peery, on her account in the Gentry County Bank, payable to the Mechanics Bank of St. Joseph, Missouri (which afterwards became the Commerce Bank of St. Joseph, Missouri). The check was presented to defendant bank by one Walter C. Stewart. Defendant collected the funds from the account of plaintiff in the Gentry County Bank, and credited same to the account of Stewart in the Mechanics Bank. Stewart withdrew all of the funds, upon his various checks.

Trial to the court, without a jury, resulted in judgment for defendant. Plaintiff appeals.

Mrs. Peery and her husband were warm friends of Walter Stewart. After Mr. Peery died Mrs. Peery sought the advice of Stewart regarding the investment of some money. On May 17, 1956, Mrs. Peery delivered to Stewart her check payable to him for $1,000.00, drawn on her account in the Gentry County Bank. On that date Stewart delivered to her an instrument reciting, in part, as follows: "Buyers Pool

Number Three" and, beneath, "W. C. Stewart, director." Upon the face of the instrument there also appeared, in part, the following: "1,000.00 (one non-voting unit) St. Joseph, Mo., May 18, 1956 * * * upon dissolution of this third buyers pool we as principles promise to pay to the order of Adele Irwin Peery at the Mechanics Bank of St. Joseph, Missouri, One thousand dollars." This instrument appears to have been, originally, a printed form of note intended for use by customers of the Mechanics Bank of St. Joseph.

On August 16, 1956, Mrs. Peery delivered to Stewart a second check, payable to him, in the amount of $1,000.00, drawn on her account in the Gentry County Bank. Each of these checks bore on the back the endorsement of Walter C. Stewart. There was undisputed evidence to the effect that Stewart received $2,000.00 on said checks, and deposited same to his account in another bank. On August 16, 1956, Mrs. Peery also executed and delivered to Stewart her check for $9,000.00, drawn on the Gentry County Bank and made payable "to the order of Mechanics Bank". The check was not endorsed by Stewart. Mrs. Peery never authorized defendant to deposit the proceeds in its bank to the credit of Stewart, or to pay it out to him on his order.

The evidence in this case is undisputed to the effect that, while Mr. Klamm, now president of defendant bank, knew Mr. Stewart personally and as a friend, prior to August, 1956, Mr. Stewart had never been a customer of defendant; that he had no account at defendant bank; that Stewart presented to the bank Plaintiff's Exhibit 1, a check for $9,000.00, drawn by Mrs. Peery and made payable to defendant; that he did not endorse it; that the proceeds of the check, $9,000.00, were collected by defendant and placed to the credit of Stewart, as a checking account; that defendant never had any business relations with Mrs. Peery; that Stewart informed defendant's then vice president, Mr. Klamm, that he had received the check to use in making investments for Mrs. Peery; that defendant's officers never, at any time, inquired of Mrs. Peery concerning this transaction; that Stewart's reputation was above reproach; that Mrs. Peery never made inquiry of defendant concerning this matter, in any manner, from the date of its occurrence until in 1959, after the death of Mr. Stewart.

The evidence is also undisputed to the effect that Stewart purchased, paid for, and delivered to Mrs. Peery certain stocks of the value of $2,350.41. These stocks were paid for, exclusively, with checks drawn on the $9,000.00 account established in defendant's bank, in Stewart's name. Stewart cashed the two $1,000.00 checks, placed the proceeds thereof to his own credit in his own bank, and checked it out, in full, for his own purposes, no part thereof ever having been received by plaintiff.

Mrs. Wright, executrix, testified to the effect that she knew Stewart intimately; that he was a close friend and intimate of Mr. and Mrs. Peery; that she had personal, first hand knowledge regarding Mrs. Peery's dealings with Stewart for the purchase of stock in a "buyers' pool"; that Stewart asked witness to invest; that the two one thousand dollar checks were delivered to Stewart by Mrs. Peery to be used for the purpose of buying stocks. She identified Stewart's signature as an endorser on both checks. She identified the $9,000.00 check and stated that it was given in order to transfer money to defendant bank. She stated that her aunt showed her the two certificates of stock (heretofore mentioned) purchased for her by Stewart about October 1, 1956.

Mrs. Wright, on cross-examination, stated that Mrs. Peery showed her the cancelled $9,000.00 check and told her that it had been given to open an account in defendant bank; that the cancelled check bore the "name" of defendant bank; that she believed the check had been deposited in defendant bank. She stated that in March, 1959, she accompanied Mrs. Peery to the office of the Prosecuting Attorney

of Buchanan County; that they requested that criminal proceedings be instituted against Stewart. She stated that she visited defendant bank, for Mrs. Peery, during the last week in December, 1958, or the first part of January, 1959; that she inquired about Mrs. Peery's account and was told that she had no account; that the $9,000.00 check to the bank had been used to establish an account for Stewart.

Mr. Hale, former prosecuting attorney, identified defendant's exhibit "A", which was a typewritten affidavit, bearing the signature of Mrs. Peery. He stated that the affidavit was dictated by witness, typed by his secretary, and signed by Adele Peery, in his presence, March 17, 1959. It is stated therein that affiant transferred $11,000.00 to Walter Stewart "or to a bank", for the sole purpose of investing money for affiant; that, as a result, 300 shares of described stock, of the value of $2350.41, had been purchased in affiant's name. Affiant requested prosecution of Stewart. Stewart died before a trial could be had.

Plaintiff contends that she is entitled to judgment for $8,649.59 the balance remaining from $11,000.00 in checks written by Mrs. Peery and paid from her bank account, less $2,350.41, the value of stocks purchased in her name with a part of this money. Defendant contends that it is blameless in this transaction; that it is not legally liable in any amount; and that judgment in its favor should be affirmed. However, it asserted at the trial that, since it never had custody of, nor knew about the two $1,000.00 checks delivered to Stewart, and that stocks of the value of $2,350.41 were purchased by Stewart, paid for with two checks written on Stewart's account, defendant should not be held liable for more than the sum remaining in the account after deduction for the value of the stocks. We agree that plaintiff, if she is entitled to recover, may not recover from defendant more than the amount of the loss that she sustained by reason of the conduct of the bank with regard to the check for

$9,000.00. Defendant had no connection whatever with the two $1,000.00 checks, which Stewart received, cashed and spent. If plaintiff is entitled to recover from defendant, she may not recover more than $6,649.51. To permit recovery against defendant of a greater amount would not be just.

In Federal Savings & Loan Ins. Corporation v. Kearney Trust Co., 151 F.2d 720, 721–723, the Circuit Court of Appeals considered a case tried in the District Court of the United States, Western District of Missouri. Wilson, president of a loan association, caused checks to issue from the loan association, made payable to order of defendant Kearney Trust Co. Upon Wilson's request the proceeds were, by the bank officials, deposited in the name of and to the account of Wilson. The bank made no inquiry concerning this matter but merely followed Wilson's request. Wilson withdrew the money $19,000.00, and used it for his own purposes. The insurance company sued and, on appeal (721) the court held that the bank was not authorized to credit Wilson's account with the proceeds of loan company checks without inquiry, saying at 725–726: "But if the bank have knowledge that the officer (of the drawer of the check) is using the check for his personal benefit, e. g. to pay his debt to the bank *or to deposit it to his personal credit*, then the bank is put upon inquiry and if it fail to make it, pays at its peril." At page 726 of the opinion in Federal Savings & Loan Ins. Corp. v. Kearney Trust Co., supra, the court quoted from Sims, Ex'r. v. United States Trust Co. of New York, N.Y., 103 N.Y. 472, 9 N.E. 605, 606, as follows: "The check, upon its face, imported the ownership of the moneys represented in it by Dr. Sims, and *his desire that its custody be transferred from the People's Bank to the defendant.* * * * If he had so intended (to pay the money to Crowell), the check *would have been made payable to Crowell's order.* * * * The defendant could have refused to receive the deposit * * * but, having accepted * * * it was bound to

keep Dr. Sims' moneys until it received his directions to pay them out." (Emphasis ours.)

We adopt this language in the present case. It clearly declares what the law should be in cases similar to the one at bar. No other rule can or will provide safety for the deposits of members of the public, who deal with banks and must of necessity, depend upon the rule that banks will receive, hold and disburse the moneys of their depositors as such depositors direct.

The judgment is clearly erroneous and is not supported by substantial evidence. It is reversed and the cause remanded with directions that the judgment be set aside and a new judgment in favor of plaintiff and against defendant be entered in the amount of $6,649.59 and for costs.

PER CURIAM.

The foregoing opinion by FLOYD L. SPERRY, Special Commissioner, is hereby adopted as the opinion of the Court.

All concur.